HON. JAMES BARRETT,
HON. LOYAL C. KELLOGG,  } ASSISTANT JUDGES.
HON. ASAHEL PECK,

---

## ANDREW J. POTTLE *v.* THE TOWN OF MAIDSTONE.

### *Bounty. Soldiers.*

On the 19th September, 1864, the plaintiff enlisted at the solicitation of the select-men, and on the 23d September was mustered into the United States service to the credit of the town of Maidstone on a quota of three duly called from said town under a call of the President for 500,000 troops, and was to receive $800 bounty, and took a town order for that amount. On the 2d of said month said town voted to raise $800 "to pay volunteers who may be mustered into the United States service." On the 19th of said month a meeting was warned to be held on the 1st of October, 1864, "to vote when and how the money shall be raised to pay volunteers to fill the quota of the town under the call," &c. At the meeting it was "voted to raise $1600 on the grand list to be collected forthwith and paid into the town treasury to pay volunteers *gone into the United States service* under the late call of the President for 500,000 troops." When the first meeting was called and held none had enlisted under said call. When the second meeting was called

three men, including the plaintiff, had been enlisted, under a contract to pay them $800. each. On the 3d of August, 1864, an order was duly made upon Maidstone and Ferdinand for five men under said call for 500,000, but on the 1st of September an order was made for three men from Maidstone alone. On the 20*th of September,* the day after the enlistment and contract of the plaintiff, the selectmen of Maidstone were notified by an order from the Adjutant and Inspector General's office dated *September 17th,* 1864, that the quota of Maidstone under said call was but two men. *Held,* that the town in pursuance of their proceedings in raising and appropriating money, and of the selectmen in making the enlistment of the plaintiff, at the time of so making it, became bound by their contract with the plaintiff, and he was entitled to recover on his town order.

ACTION of assumpsit with special counts on a town order of $800, and general counts. Plea, general issue. Trial by court, March Term, 1866, STEELE, J., presiding.

The said order was given in payment of a town bounty to the plaintiff, who enlisted on Monday, September 19th, 1864, by the procurement of John W. Webb, one of the selectmen of the town of Maidstone upon the promise from Webb that he should receive the sum of $800. town bounty. He was mustered in about the 23d of September, 1864, to the credit of Maidstone, and was discharged June 1st, 1865. The contract which Webb made was known and approved by the other selectman, P. R. Follansbee. The town defended upon the ground that the selectmen had no authority to make this contract on behalf of the town. In addition to other orders from the office of the Adjutant and Inspector General of Vermont, referred to in the opinion, there was an order or circular from the same office announcing that the Governor had procured the War Department to allow a credit to Vermont upon the quota of the state on account of errors brought to the notice of the Department, and distributing this credit to the several towns, by which distribution Maidstone is credited one (1.) This order or circular was dated September 17th, 1864, and was received by the selectmen the morning after they enlisted the plaintiff and made their contract with him to pay him the bounty of $800., that is, on Tuesday, September 20th, 1864.

The other facts are sufficiently stated in the opinion.

The court rendered judgment for the plaintiff for the amount of the order and interest. Exceptions by the defendant.

Pottle *v.* Maidstone.

*George N. Dale*, for the defendant.

*H. Heywood*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J.    It is to be assumed from the case as it comes before this court, that the selectmen were authorized, as the recruiting agents of the town, to enlist so many men as were required to make up the quota of said town under the call for five hundred thousand men.

It is claimed that only two men were required for this purpose, and that they had been obtained prior to the . enlistment of the plaintiff, and had been paid all the money raised by the town for the purpose of paying recruits, and therefore, that the selectmen had no authority to enlist the plaintiff on the credit of the town, and so the order drawn by them and accepted by the treasurer as a means of paying the sum agreed to be paid him upon his enlisting does not bind the town, nor does the contract to pay him that sum, in pursuance of which he enlisted bind the town.    This brings in question the proper construction and effect to be given to the proceedings of the town, as shown by the record referred to and exhibited in the case.    In accordance with familiar principles and rules bearing upon and governing the subject of giving construction in such cases, it is essential to give heed to the purpose, occasion and circumstances of said proceedings.    The enlistment contract, by virtue of which the plaintiff was mustered into service, was made on the 19th of September, 1864.    The plaintiff was mustered in about the 23d of September, 1864.    The order from the Adjutant General's office of August 3d, 1864, called for five men as the quota of Maidstone and the unorganized town of Ferdinand, under a call of the President for 500,000 troops.    The order from the same office of September 1st called for three men as the quota of Maidstone, omitting Ferdinand. It was under this order that the enlistment was made.

In the meantime the town, on the 2d of September, held a meeting, warned on the 19th of August, and voted *to raise* $800. to pay volunteers *who may be mustered into the United States service.*    On the

Pottle *v.* Maidstone.

19th of September, the day on which the plaintiff was enlisted, a meeting was warned to be held on the 1st of October, 1864. The second article was, "to vote when and how the money shall be raised to pay volunteers *to fill the quota* of the town under the call of the President of the United States for 500,000 troops." At the meeting it was " voted to raise $1600. on the grand list to be collected forthwith and paid into the town treasury to pay volunteers *gone into the United States service* under the late call of the President for 500,000 troops."

When the first meeting was called and held it does not appear that any men had been enlisted under said call. Only $800. was voted for the purpose of paying recruits. When the second meeting was called three men had been enlisted under a contract to pay them $800. a-piece. When the meeting was held on the 1st of October all three had " gone into the United States service," in the language of the vote. Take then the fact that the three were enlisted when that number was required to fill the quota, as announced from the Adjutant General's office, at the agreed price of $800. each ; that on the 23d of September they went into the United States service ; that the town had, on the 2d day of September, voted *to raise* $800. for the purpose, and on the 1st of October voted to raise $1600., and what is the common sense inference as to what was the understanding and meaning of the town? Whatever diversity of opinion there may be on the subject, we have no doubt that the town meant to raise money enough to pay the three men according to the contract of enlistment. The argument seems very impotent that the object of the second meeting was only to finish what had been left undone at the first meeting, viz : to vote *when and how* the money voted to be raised at the first meeting, should be raised. The first vote was " to raise $800. to pay volunteers *who may be* mustered into the United States service." That had been exhausted in getting one man. On the day when the full number was secured, a meeting was warned " to vote when and how the money shall be raised to pay *volunteers to fill ths quota* of the town," &c., that is, to pay the men then just enlisted according to their contracts. If the object had been merely to supplement the vote of the 2d of September, by voting " when

and how" the money then voted to be raised should be raised, the second article of the warning would have read quite differently from what it does. Then, when the vote, in pursuance of said second article, is considered, it negates on its face the idea that it was designed, or understood, as fixing the "when and how" of raising the $800. voted to be raised on the 2d of September; for, instead of voting to raise *said eight hundred dollars* on the grand list, as it should have done if the view claimed by the defendant be correct, it was voted to raise $1600.," &c., double the amount of the former vote.

We think that the only sensible construction to be put on the proceedings, is that which accords to the town honesty and good faith when raising its quota to swell the patriot hosts who went forth to battle for "liberty and union." It seems to us that to give the construction and effect claimed by the defendant would alike contravene the meaning of the language of the record, as well as the obvious purposes and meaning of the town, as indicated by the occasion and circumstances of the proceedings shown by the record.

As no question is made as to the authority of the selectmen to make the enlistment of the plaintiff, except as it is affected by the proceedings of the town, as shown by the record produced, we find no occasion to prolong the discussion.

Regarding the judgment of the county court to be correct, it is affirmed.